Dr. Charles JARRETT, Jr., and Edward Austin, individually and on behalf of all Purchasers of Contracts for delivery of coal from National Coal Exchange, Plaintiffs–Appellants, Cross–Appellees,

v.

Robert L. KASSEL, Defendant–Appellee, Cross–Appellant.

Nos. 91–5766, 91–5787.

United States Court of Appeals, Sixth Circuit.

Argued March 17, 1992.

Decided Aug. 4, 1992.

Rehearing and Rehearing En Banc Denied Sept. 17, 1992.

Erich W. Merrill (argued and briefed), Schaeffer & McCrary, Memphis, Tenn., for Erich Merrill, Dr. Charles L. Jarrett, Jr., and Edward Austin, et al.

Lewie R. Polk, III, Hal Gerber (argued and briefed), Gerber Law Offices, Memphis, Tenn., for Robert L. Kassel.

Before: GUY and RYAN, Circuit Judges; and JOINER, Senior District Judge.[*]

RYAN, Circuit Judge.

Plaintiffs, Dr. Charles L. Jarrett, Jr. and Edward Austin, et al., appeal the district court's grant of summary judgment for the defendant, Robert L. Kassel, on their claims that Kassel conspired with others to sell contracts to the plaintiffs for future delivery of coal, in violation of the Commodity Exchange Act, 7 U.S.C. §§ 6, 6a, 6b(A), 6b(C), 6h(1), and 6o(1) (1976), and conspired to defraud them in violation of Tennessee common law. Plaintiffs also appeal two interlocutory orders of the district court. In addition, defendant Kassel cross-appeals two interlocutory orders that were adverse to him.

The plaintiffs raise the following issues on appeal: 1) whether the district court erred in granting summary judgment to Kassel on the ground that the plaintiffs' claims were barred by the appropriate statute of limitations; 2) whether the district court abused its discretion in denying plaintiffs' motion for partial summary judgment on the issue of liability; and 3) whether the district court erred in denying the plaintiffs' motion for an alternative deposition procedure.

Kassel raises two issues on his cross-appeal: 1) whether the district court erred in denying his request that the court disqualify the plaintiffs' attorney, Erich Merrill, due to Merrill's dual status as attorney and witness; and 2) whether the district court erred in finding that Kassel was collaterally estopped from relitigating certain issues decided in prior litigation.

We conclude that the district court erred in granting summary judgment to Kassel on the ground that plaintiffs' claims were barred by the statute of limitations and therefore we shall reverse and remand the case for further proceedings. Moreover, because we reverse the final order from which this appeal was taken, there is no longer a final order to support our review of the interlocutory orders of the district court. *See Milan Express Co. v. Western Surety Co.,* 886 F.2d 783, 785 n. 1 (6th Cir.1989). We therefore decline to address the remaining issues raised by the parties on appeal.

I.

The plaintiffs in this action are former customers of an organization known as the National Coal Exchange ("NCE"). From April 1980 until December 1981, plaintiffs purchased contracts for future delivery of coal from NCE. Plaintiffs allege that the owners and employees of NCE secured these sales by making various misrepresentations and without having a viable means of acquiring the coal to fulfill the contracts. In 1983, counsel for the plaintiffs, Erich Merrill, initiated the suit now before this court on appeal to recover the plaintiffs' losses on these contracts. This was not the first suit regarding the sale of these contracts, however, and to understand the procedural context of the case before this court, it is necessary to understand the history of the case that preceded it.

In 1981, the Commodity Futures Trading Commission brought a suit against NCE, its associated companies, and their officers ("CFTC litigation"), alleging multiple violations of the Commodity Exchange Act ("CEA"). *Commodity Futures Trading Commission v. National Coal Exchange, Inc., et al.,* No. 81–2250 (W.D.Tenn. Apr. 2,

[*] The Honorable Charles W. Joiner, United States District Court for the Eastern District of Michigan, sitting by designation.

1982). The federal district court found that NCE had indeed violated the CEA in selling coal contracts to the plaintiffs. *Id.,* slip op. at 22. Robert Kassel, the defendant in this appeal, was not a defendant in the CFTC litigation. In fact, he acted as NCE's counsel both before and during that litigation.

The court in the CFTC litigation appointed Erich Merrill as receiver for NCE and the other companies involved in the scheme. Merrill sent notice of his appointment to about 900 customers of NCE and requested that they fill out a form providing the details of their purchases of coal contracts from NCE. The notice also stated: "The Receiver is not able to furnish you with any legal advice. If you have any questions, you should consult with legal or tax counsel of your choice." Approximately 500 customers completed and returned the forms.

As receiver, Merrill acquired the assets of the companies for liquidation and distribution to the defrauded customers but failed to collect sufficient funds for that purpose. Consequently, he sought and obtained permission from the court in the CFTC litigation to file the lawsuit now before this court on appeal on behalf of NCE's customers against the officers of NCE and the Tennessee River Coal Company, one of the other companies involved in the scheme. Merrill and two of the defrauded customers, plaintiffs Jarrett and Austin, filed this suit in November 1983. Jarrett and Austin sued individually and on behalf of all purchasers of futures contracts from NCE, while Merrill sued as receiver for NCE and sought to act as a class representative. Merrill also acted as attorney for Jarrett and Austin.

They alleged that the officers of NCE and the Tennessee River Coal Company conspired to sell contracts for future delivery of coal in violation of the Commodity Exchange Act, 7 U.S.C. §§ 6, 6a, 6b(A), 6b(C), 6h(1), and 6o(1) (1976), and conspired to defraud their customers in violation of Tennessee common law. They further claimed that Merrill, as the receiver of NCE, was entitled to be indemnified against the liability imposed on NCE as a result of the officers' wrongful conduct.

Significantly, the original complaint did not name Kassel as a defendant. Plaintiffs moved to add him as an additional defendant on May 23, 1985, and he was joined as a defendant on July 5, 1985. The other defendants have settled; Kassel is the only one that remains.

Merrill, Jarrett, and Austin originally brought this action on behalf of all the customers of NCE, but they did not move for class certification until October 23, 1984. Although a hearing was set for this motion, it was continued. In the meantime, various defendants began to settle with the plaintiffs, and Kassel moved for summary judgment on the grounds that the fraud actions against him were barred by the statute of limitations and that Merrill had failed to state a claim upon which relief could be granted with respect to the indemnification action.

In September 1986, the court granted Kassel's motion for summary judgment on the indemnification action but denied it in all other respects. The court also noted, however, that plaintiffs' fraud claims, both under the Commodity Exchange Act and Tennessee common law, would be barred under Tennessee's three-year statute of limitations for fraud actions, unless plaintiffs could show that the running of the statute should be tolled under the doctrine of fraudulent concealment. The court therefore gave the plaintiffs ten days to amend their complaint to plead particular allegations of fraudulent concealment.

The plaintiffs amended their complaint accordingly and alleged that Kassel took several steps to conceal his role as a principal of NCE. Kassel subsequently renewed his motion for summary judgment. On May 21, 1987, the court denied Kassel's motion and held that, as a matter of law, Erich Merrill had exercised due diligence in investigating Kassel's role in the fraudulent scheme.

After their initial request for class certification had lain dormant for three years, plaintiffs again moved for class certification on October 29, 1987. The court denied

the motion on July 6, 1988 and entered an order on August 8, 1988, refusing to reconsider the denial. On November 10, 1988, however, the court entered an order allowing potential plaintiffs to move to intervene in the suit by December 12, 1988. Several of the proposed class members complied with that order, and on March 1, 1990, the court granted the timely motions to intervene of 217 plaintiffs.

On March 28, 1990, the intervening plaintiffs filed their complaints. In these complaints, the intervenors reiterated the allegations set forth in the amended complaint filed by Merrill, Austin, and Jarrett concerning Kassel's fraudulent concealment of their causes of action. They did not allege that they had taken any independent action to uncover their causes of action against Kassel. Instead, they relied on Merrill's investigation of Kassel, conducted before December 5, 1984. Merrill signed the intervening plaintiffs' complaints as their attorney.

After the intervenors' complaints were filed, Kassel renewed his motion for summary judgment, contending that the plaintiffs' actions were barred by Tennessee's three-year limitations period for claims of fraud. In an order entered October 22, 1990, the district court concluded that the limitations period began to run in December 1981, when the last contract was sold, because that was the last overt act in furtherance of the conspiracy. The parties do not dispute that conclusion on appeal. Moreover, Kassel conceded and the district court held that the statute of limitations was tolled as to the intervening plaintiffs from the date of the filing of the motion to add Kassel as a defendant, in May 1985, until the denial of class certification, in July 1988. Kassel contended, however, that the statute of limitations had already elapsed by the time the plaintiffs moved to add him as a defendant in May 1985, more than three years after the last overt act of the conspiracy.

The plaintiffs argued that the running of the statute was tolled during that time as a result of Kassel's fraudulent concealment of their cause of action against him. Kassel responded that the statute was not tolled because the plaintiffs had not acted with due diligence to discover their claims. The plaintiffs contended that they could rely on the due diligence of Merrill, who acted as their representative, first as receiver of NCE and later as attorney for the proposed class. The court rejected the intervening plaintiffs' arguments and granted summary judgment to Kassel. In April 1991, the court entered a similar order granting summary judgment to Kassel against the original plaintiffs, Jarrett and Austin, and for the same reasons.[1]

## II.

We review a grant of summary judgment de novo. *EEOC v. University of Detroit*, 904 F.2d 331, 334 (6th Cir.1990). We therefore apply the same standard as applied by the district court. Under Fed.R.Civ.P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

## III.

Plaintiffs raise two arguments in support of these claims that their actions are not barred by the statute of limitations. First, they contend that with respect to their claims under 7 U.S.C. §§ 6 and 6h(1) (1976), the district court erred in applying Tennessee's three-year period for fraud claims, Tenn.Code Ann. § 28–3–105, and should have applied Tennessee's ten-year catch-all statute of limitations. Tenn.Code Ann. § 28–3–110. Second, they maintain that the district court erred in holding that the doctrine of fraudulent concealment did not toll the running of the three-year statutory period as it applied to their claims of fraud

---

**1.** By this time, Merrill had withdrawn as a party to this suit because he was no longer the receiv-  er of NCE.

under 7 U.S.C. §§ 6b(A), 6b(C) and 6o(1) (1976) and Tennessee common law.

## A.

### Claims under 7 U.S.C. §§ 6 and 6h(1)

Plaintiffs base one of their claims on Kassel's alleged violation of §§ 4 and 4h(1) of the CEA, 7 U.S.C. §§ 6 and 6h(1) (1976) (subsequently amended and recodified at 7 U.S.C. § 6(a) (1982)). At the time the plaintiffs purchased the coal contracts at issue in this case, these sections prohibited the sale of commodity futures contracts "except ... where such contract is made by or through a member of a board of trade which has been designated by the Commission as a 'contract market.' "[2] Before addressing whether the plaintiffs' claims under these sections were time-barred, we must first determine whether plaintiffs even had private rights of action under these sections of the CEA. Although the parties and the district court assumed that plaintiffs had an implied private cause of action under these sections of the CEA, our examination of the statute and the relevant case law convinces us that there is no implied private cause of action for violations of these sections of the Commodity Exchange Act.[3]

The Supreme Court addressed the availability of implied private causes of action under certain sections of the Commodity Exchange Act in *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 380–81, 102 S.Ct. 1825, 1840–41, 72 L.Ed.2d 182 (1982). In *Curran*, the Court did not hold broadly that private causes of action exist under any and all sections of the CEA but merely that private actions could be implied under five discrete sections of the act: 7 U.S.C. §§ 6a, 6b, 7(d), 7a(8), and 13(b). *Id.* at 390–91, 102 S.Ct. at 1845–46.

The *Curran* Court based its holding primarily on the fact that in 1974, when Congress amended the CEA, the federal courts recognized implied private causes of action under the five sections in question. The majority in *Curran* observed that this existing case law was part of the "contemporary legal context" at the time of the 1974

**2.** Specifically, § 4 of the CEA formerly provided:

> It shall be unlawful for any person to deliver for transmission through the mails or in interstate commerce by telegraph, telephone, wireless, or other means of communication any offer to make or execute, or any confirmation of the execution of, or any quotation or report of the price of, any contract of sale of commodity *for future delivery on or subject to the rules of any board or trade in the United States, or for any person to make or execute such contract of sale which is or may be used* for (a) hedging any transaction in interstate commerce in commodity or the products or byproducts thereof, or (b) determining the price basis of any such transaction in interstate commerce, or (c) delivering commodity sold, shipped, or received in interstate commerce for the fulfillment thereof, *except, in any of the foregoing cases, where such contract is made by or through a member of a board of trade which has been designated by the Commission as a "contract market," as hereinafter provided in this chapter....*

7 U.S.C. § 6 (1976) (emphasis added).
Similarly, § 4h(1) provided as follows:

> It shall be unlawful for any person—
> (1) to conduct any office or place of business anywhere in the United States or its territories for the purpose of soliciting or accepting any orders for the purchase or sale of

any commodity for future delivery, or for the making or offering to make any contracts for the purchase or sale of any commodity for future delivery, or for conducting any dealings in commodities for future delivery, that are or may be used for
> (A) hedging any transaction in interstate commerce in such commodity or the products or by-products thereof, or
> (B) determining the price basis of any such transaction in interstate commerce, or
> (C) delivering any such commodity sold, shipped, or received in interstate commerce for the fulfillment thereof,
> *if such orders, contracts, or dealings are executed or consummated otherwise than by or through a member of a contract market....*

7 U.S.C.S § 6h(1) (1976) (emphasis added).

**3.** Congress amended the Commodity Exchange Act in 1982 and inserted an express provision for private rights of action under the Act. *See* Futures Trading Act of 1982, Pub.L. No. 97–444, 96 Stat. 2322 (codified at 7 U.S.C. § 25 (1988)). This statutory right of action, however, is only available for causes of action that accrued after January 11, 1983. 7 U.S.C. § 25(d) (1988). The *district court found and the parties do not dis-*pute that plaintiffs causes of action in this case accrued no later than December 1981. The statutory right of action is therefore not available to the plaintiffs.

amendments, and that Congress was presumed to have been aware of that law. The majority concluded that Congress, by failing to alter expressly this existing case law in its 1974 amendments to the CEA, implicitly ratified the courts' recognition of implied causes of action under the five sections of the CEA in question. *Id.* at 385–87, 102 S.Ct. at 1842–44.

The majority's analysis in *Curran,* however, does not dispose of the question that faces us here. We can find no cases that have recognized an implied private cause of action under either § 4 or § 4h(1) of the CEA, 7 U.S.C. §§ 6 and 6h(1) (1976). Consequently, it cannot be said that private causes of action under these two sections were part of the "contemporary legal context" when Congress amended the CEA in 1974. As a result, we must turn to the general principles courts use to determine whether a private right of action is implicit in a statutory provision that does not expressly provide for one.

Those principles were summarized by the Supreme Court in *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2087–88, 45 L.Ed.2d 26 (1975) (citations omitted):

> First, is the plaintiff "one of the class for whose especial benefit the statute was enacted"—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

Applying these factors to §§ 4 and 4h(1) of the CEA, 7 U.S.C. §§ 6 and 6h(1), we conclude that these sections do not give rise to an implied private cause of action.

We begin by noting that the second and fourth factors identified in *Cort* are of no help to us in this case. The second *Cort* factor asks if there is any indication of legislative intent on the question of an implied private remedy. As noted above, private causes of action under the sections in question were not part of the contemporary legal context when Congress amended the CEA in 1974. We therefore have no indication of the intent of Congress with respect to the availability of private causes of action under these sections of the CEA.

The fourth *Cort* factor asks whether the cause of action is one traditionally relegated to state law. This factor does not support finding an implied private cause of action because commodities regulation is not an area of law that has been traditionally relegated to the states. Indeed, the federal government has been the primary regulator of commodities markets since the early part of this century. *See Curran,* 456 U.S. at 360–366, 393–94, 102 S.Ct. at 1830–33, 1847. Because the second and fourth *Cort* factors do not help us, we must rely on the first and third factors.

Under the first factor, we must determine whether the plaintiffs in this action are members of the class for whose especial benefit the statute was enacted. We conclude that they are not. Unlike the antifraud provisions of the CEA, which the *Curran* court, and other federal courts before it, held give rise to implied private causes of action, §§ 4 and 4h(1) of the CEA are not aimed specifically at protecting individual investors from fraudulent schemes. Rather, they provide the basic framework for the entire commodities regulatory system. It is under these provisions, which essentially require that all commodities futures transactions take place in regulated commodities markets, that the CEA's overall regulatory purposes are achieved. As such, these sections are directed primarily toward preserving the integrity of the market system as a whole, which in turn benefits the entire economy, rather than merely protecting individual investors. As a result, the plaintiffs are not members of a " 'class for whose *especial* benefit' " these sections of the CEA were enacted. *Cort,* 422 U.S. at 78, 95 S.Ct. at 2087 (citation omitted) (emphasis added). We therefore conclude that application of

the first prong of the *Cort* analysis to these sections of the CEA suggests that they do not give rise to an implied private cause of action.

It might be argued, however, that the third *Cort* factor supports finding an implied cause of action under these sections. After all, in *Curran*, the Supreme Court recognized a legislative purpose to provide strong protection for futures traders from price manipulation and other fraudulent conduct violative of the statute. 456 U.S. at 387, 102 S.Ct. at 1843–44. Thus, it might be suggested that providing a private right of action against those who trade outside registered contracts markets would further the underlying purpose of the legislative scheme behind the CEA. This argument loses force, however, when it is recognized that private parties already have implied causes of action under the specific fraud and manipulation provisions of the CEA. Moreover, the CFTC retains express authority to enforce §§ 4 and 4h(1). 7 U.S.C. § 13a–1. Under these circumstances, consideration of this factor does not overcome our conclusion that under the first *Cort* factor, a private cause of action should not be implied for violations of these sections of the CEA.

For these reasons, we conclude that the plaintiffs do not have an implied private cause of action for Kassel's alleged viola-

tions of §§ 4 and 4h(1) of the CEA, 7 U.S.C. §§ 6 and 6h(1) (1976). We therefore need not address plaintiffs' contention that their claims under these sections were not barred by the applicable statute of limitations.

### B.

#### Claims under 7 U.S.C. §§ 6b(A), 6b(C) and 6o(1) and Tennessee Common Law

The plaintiffs also base their claims on Kassel's alleged violation of §§ 4b(A), 4b(C), and 4o(1) of the CEA, 7 U.S.C. §§ 6b(A), 6b(C), and 6o(1) (1976). These sections of the CEA make it unlawful for certain persons to deceive or defraud other persons when making commodities futures contracts.[4] The district court granted summary judgment to Kassel on these claims on the ground that they were barred by Tennessee's three-year statute of limitations for claims of fraud. Tenn.Code Ann. § 28–3–105. In reaching this decision, the district court held that the doctrine of fraudulent concealment did not toll the running of the statute because the plaintiffs had not exercised due diligence in investigating their potential claim against Kassel. The court further held that any diligence exercised by Erich Merrill before he became plaintiffs' counsel was not attributa-

---

4. 7 U.S.C. § 6b (1976) provided in relevant part:
   It shall be unlawful (1) for any member of a contract market, or for any correspondent, agent, or employee of any member, in or in connection with any order to make, or the making of, any contract of sale of any commodity in interstate commerce, made, or to be made, on or subject to the rules of any contract market, for or on behalf of any other person, or (2) for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery, made, or to be made, on or subject to the rules of any contract market, for or no behalf of any other person if such contract for future delivery is or may be used for (a) hedging any transaction in interstate commerce in such commodity or the products or by-products thereof, or (b) determining the price basis of any transaction in interstate commerce in such commodity, or (c) delivering any such commodity sold, shipped, or received in interstate commerce for the fulfillment thereof—

(A) to cheat or defraud or attempt to cheat or defraud such other person;

 . *   *   *   *   *   *

(C) willfully to deceive or attempt to deceive such other person by any means whatsoever in regard to any such order or contract or the disposition or execution of any such order or contract, or in regard to any act of agency performed with respect to such order or contract for such person....

7 U.S.C. § 6o(1) (1976) provided in relevant part:
   (1) It shall be unlawful for any commodity trading advisor or commodity pool operator, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly—

(A) to employ any device, scheme, or artifice to defraud any client or participant or prospective client or participant; or

(B) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or participant or prospective client or participant.

ble to the plaintiffs. Plaintiffs challenge these holdings on appeal.

Before addressing the plaintiffs' arguments in this regard, we make two preliminary observations. We note first that the parties do not dispute the district court's decision to apply Tennessee's three-year statute of limitations for claims of fraud to plaintiffs' claims under the CEA. Because plaintiffs' claims under the CEA are implicit, the CEA does not contain an express statute of limitations with respect to such claims.[5] When federal courts are faced with a private cause of action under a federal statute that does not contain a statute of limitations, they generally borrow the forum state's statute of limitations for the state cause of action that is most analogous to the federal cause of action in question. *See, e.g., Carruthers Ready–Mix, Inc. v. Cement Masons Local Union No. 520,* 779 F.2d 320, 322 (6th Cir.1985). The district court in this case followed this general practice, borrowing Tennessee's statute of limitations for claims of common law fraud. Because the parties do not contest the district court's application of that statute to the claims now under consideration, we accept that conclusion, without reviewing it, for the purpose of disposing of this appeal.

■ We further observe that unlike the sections of the CEA addressed above, the Supreme Court has held expressly that § 4b of the CEA, 7 U.S.C. § 6b, gives rise to an implied private right of action. *Curran,* 456 U.S. at 390–91, 102 S.Ct. at 1845–46. The *Curran* court, however, did not address the question of whether a private right of action is also implicit under § 4o of the CEA, 7 U.S.C. § 6o. Nevertheless, in analyzing § 4b, the Court concluded that the language of § 4b compelled its "holding that an investor defrauded by his broker may maintain a private cause of action for fraud." *Id.* In this regard, the Court

found that § 4b was enacted for the special benefit of the customers of commodities brokers and that the first *Cort* factor therefore supported an implied private cause of action under this section. We conclude that the same reasoning applies to § 4o. Like § 4b, § 4o is specifically directed toward preventing fraud and misrepresentation in commodities contracts. It differs from § 4b only in that it is concerned with fraud and misrepresentation by commodity trading advisors and commodity pool operators. This difference, however, does not affect our analysis. The language of this section makes it clear that it was enacted for the special benefit of defrauded customers of commodity trading advisors and commodity pool operators. Under the analysis set forth in *Cort* and *Curran,* § 4o of the CEA therefore gives rise to an implied private right of action. We now turn to the question of fraudulent concealment.

The plaintiffs contend that Kassel fraudulently concealed plaintiffs' claims against him, and that Kassel's actions therefore tolled the running of the statute of limitations so that it had not run by the time he was added as a defendant on July 5, 1985. The district court held that the fraudulent concealment doctrine did not apply to plaintiffs' claims because plaintiffs had failed, as a matter of law, to exercise due diligence to discover them.

■ Under the equitable tolling doctrine of fraudulent concealment, the running of a statute of limitations is tolled where the plaintiff demonstrates that: (1) the defendant took affirmative steps to conceal the plaintiff's cause of action; and (2) the plaintiff could not have discovered the cause of action despite exercising due diligence. *See Campbell v. Upjohn Co.,* 676 F.2d 1122, 1126 (6th Cir.1982); *Dayco Corp. v. Goodyear Tire & Rubber Co.,* 523 F.2d 389

---

5. When Congress amended the CEA in 1983 and created an express private right of action under the Act, it also included a two-year statute of limitations. 7 U.S.C. § 25(c). This limitations period, however, does not apply to plaintiffs' implied causes of action because those actions accrued in December 1981, before the amendments to the CEA became effective on January 11, 1983. 7 U.S.C. § 25(d) provides "[t]hat the enactment of the Futures Trading Act of 1982 shall not affect any right of any parties which may exist with respect to causes of action accruing prior to such date."

(6th Cir.1975); *Vance v. Schulder,* 547 S.W.2d 927, 930 (Tenn.1977).[6]

In his motion for summary judgment, Kassel contended that plaintiffs had failed to raise a genuine issue of fact that they had exercised due diligence in investigating their potential claims. The district court agreed and granted summary judgment on the issue of due diligence. Plaintiffs challenge, in two ways, the district court's holding that they failed to exercise due diligence. First, they argue that Merrill's investigation as the receiver of NCE and as attorney for the proposed class constituted the exercise of due diligence on their behalf. Second, they contend that the doctrine of fraudulent concealment does not require the actual exercise of due diligence but rather requires merely that the plaintiffs show that they would not have discovered their claims any sooner than they did even if they had acted with due diligence. Plaintiffs claim they have made this more limited showing. Because we conclude that Merrill's investigation after he became attorney for the class is attributable to both the original and the intervening plaintiffs, we do not reach this second argument.

Plaintiffs concede that they did not take any independent action to investigate their potential claims against Kassel before Kassel was named as a defendant in this suit in May 1985. They argue, however, that Merrill's investigation as the receiver of NCE and as attorney for the proposed class constituted the exercise of due diligence on their behalf. Although the district court

held that Merrill had exercised due diligence as a matter of law, it concluded that Merrill's exercise of due diligence was not on behalf of either the intervenors or the original plaintiffs. Before we can address the merits of the plaintiffs' arguments, however, we must review in greater detail the history of this litigation.

Plaintiffs' amended complaint alleges that Kassel helped organize, finance and operate NCE for the purpose of selling worthless coal futures contracts to the general public. It further alleges that Kassel arranged for John Keller and Harold Slone, and their company, the Tennessee River Coal Company, to provide coal for NCE, although they had no way of obtaining the kind of coal being sold by NCE.

The plaintiffs' claim of fraudulent concealment is premised on their allegation that Kassel, in order to conceal his participation in the conspiracy, induced Keller and Slone to show on the books of the Tennessee River Coal Company that payments to Kassel were for legal services when in reality they were a percentage kickback of the proceeds from sales of the worthless coal contracts. Plaintiffs further allege that Kassel continued this cover-up by falsely stating to an agent of the CFTC that he, Kassel, was only the attorney for NCE and that all payments to him by NCE and the Tennessee River Coal Company were for legal fees.

As we noted earlier, in 1981, the CFTC brought a suit against NCE, its associated companies, and their officers in federal court. The district court found that NCE

---

**6.** We agree with the district court that the federal law of fraudulent concealment applies to plaintiffs' claims under the CEA and Tennessee's law of fraudulent concealment applies to plaintiffs' state law fraud claims. *See Campbell v. Upjohn Co.,* 676 F.2d 1122, 1126 (6th Cir.1982).

Although this court and the Tennessee Supreme Court have phrased the doctrine somewhat differently, both courts require essentially the same proof. This court requires the plaintiff to show: "(1) wrongful concealment of their actions by the defendants; (2) failure of the plaintiff to discover the operative facts that are the basis of his cause of action within the limitations period; and (3) plaintiff's due diligence until discovery of the facts." *Dayco,* 523 F.2d at 394.

Tennessee requires that "the plaintiff must prove that the defendant took affirmative action to conceal his cause of action and that he, the plaintiff, could not have discovered his cause of action despite exercising reasonable diligence." *Vance,* 547 S.W.2d at 930. Although Tennessee's formulation omits the showing of failure to discover the operative facts within the limitations period, the federal and Tennessee standards require the same proof with respect to wrongful concealment by the defendant and due diligence by the plaintiff. Our analysis of the due diligence issue is therefore the same with respect to the plaintiffs' claims under both federal law and Tennessee law.

had violated the Commodity Exchange Act and appointed Merrill as receiver of NCE and the other companies involved in the scheme. As receiver, Merrill conducted an investigation of the companies and their officers to determine who was involved in the scheme. Merrill also acquired the assets of the companies for distribution to the defrauded customers but failed to collect sufficient funds for that purpose. As a result, he requested and received the court's permission to file this lawsuit on behalf of the customers of NCE against the officers of NCE and the Tennessee River Coal Company. Merrill, and two of the defrauded customers, Jarrett and Austin, filed this suit in November 1983. Jarrett and Austin sued individually and on behalf of all purchasers of futures contracts from NCE, while Merrill sued as receiver for NCE and as a class representative of all contracts purchasers.

Although this suit was filed well within the three-year statutory period, it did not name Kassel as a defendant. The district court found, and the parties do not contest, that the statute began running in December 1981, when the last overt act of the conspiracy occurred. Thus, unless tolled, the statutory period for filing this claim against Kassel elapsed in December 1984. The plaintiffs did not move to add Kassel as a defendant, however, until May 23, 1985. They therefore must show that the running of the statute was tolled by Kassel's fraudulent concealment of their claims against him. As noted, to establish fraudulent concealment, plaintiffs must show that they exercised due diligence in the investigation of their potential claims.

Before and after Merrill filed this suit in November 1983, he investigated the records of NCE and the Tennessee River Coal Company to determine the identity of the individual conspirators. Merrill's review of these records indicated that the only payments made to Kassel were for legal services. Nevertheless, Merrill continued his investigation by sending interrogatories to Keller and Slone, officers of the Tennessee River Coal Company, concerning Kassel's participation in the operations of NCE. On November 16, 1983,

Merrill served a second set of interrogatories on Harold Slone, specifically asking him about the payment of legal fees to Kassel. Slone refused to answer this question and asserted his rights under the Fifth Amendment. In May 1984, Merrill moved for the court to overrule Slone's objections and to require Slone to answer the questions.

The matter was referred to a magistrate, who ruled that Slone's claim of rights under the Fifth Amendment lacked merit and ordered him to answer the interrogatories. Stone continued to resist, however, and filed exceptions to the magistrate's order on June 25, 1984. The district court affirmed the magistrates order on July 6, 1984. Slone still refused to comply with the order and filed a notice of appeal. That appeal was dismissed by this court for failure to prosecute on October 22, 1984.

Slone finally relented and, on December 5, 1984, informed Merrill that all the payments to Kassel by the Tennessee River Coal Company were payments of a percentage share of what Tennessee River Coal Company received from NCE, and not payments for legal services as recorded on the books. Merrill then had a court reporter take down Slone's sworn statement to this effect, and with this evidence of Kassel's involvement in the scheme, moved to add him as a defendant in May 1985.

The district court held as a matter of law that Merrill's conduct in pressing Slone for answers constituted due diligence but refused, in two separate orders, to attribute that diligence to the original plaintiffs, Jarrett and Austin, or the intervening plaintiffs. In its first order, entered on October 22, 1990, the court held that Merrill's investigation while he was the receiver of NCE was not conducted on behalf of the plaintiffs because he was not their attorney at that time and that, as receiver, he did not have the authority to act for customers of NCE in the exercise of their legal rights and responsibilities. The court further held that because the acts of fraudulent concealment occurred before this suit was filed by Merrill, his investigation during that time could not have been made on

behalf of the plaintiffs. Finally, the court concluded that because the intervening plaintiffs failed to take any independent steps to discover their claims against Kassel, they had failed to exercise due diligence as a matter of law. Their claims were therefore barred by the statute of limitations.

In its second order, entered on April 29, 1991, the court noted that like the intervening plaintiffs, the original plaintiffs, Jarrett and Austin, had not taken any independent action to determine whether they had a cause of action against Kassel. The court therefore found that they could "receive the benefit of equitable tolling only if the due diligence of their attorney Erich Merrill in attempting to discover a cause of action against Kassel can be attributed to them."

The court then attempted to determine when Merrill's representation of Austin and Jarrett began. It concluded that there was no evidence in the record that Merrill represented either Austin or Jarrett before the filing of this lawsuit on their behalf on November 3, 1983. Although both Jarrett and Austin have indicated that Merrill requested their permission to use their names in a class action lawsuit, neither of them initiated contact with Merrill or requested that the suit be filed. "Despite this lack of contact with Merrill and the plaintiffs' obvious lack of knowledge about the lawsuit and interest in it," the district court held that Jarrett and Austin were "entitled to the benefit of any action by Merrill occurring after November 3, 1983."

The district court further found, however, that all of the actions taken by Merrill to discover the cause of action against Kassel were taken before November 3, 1983. As a result, the original plaintiffs were not entitled to any tolling of the running of the statute, and their claims against Kassel were therefore barred by the statute of limitations.

■ On appeal, Kassel urges this court to adopt the reasoning of the district court. We find that reasoning to be flawed, however. Although we agree with the district court's conclusion that the actions taken by Merrill before he filed this suit in November 1983 are not attributable to the plaintiffs, we disagree with its conclusion that Merrill's actions taken after November 3, 1983, in investigating the plaintiffs' claims against Kassel, are not attributable to plaintiffs. We find that Merrill's investigation continued after that date, is attributable to the plaintiffs, and tolled the running of the statute of limitations.

Before examining the flaw in the district court's reasoning, however, we first address the plaintiffs' argument that Merrill's actions as corporate receiver for NCE were taken on their behalf. They base this argument on the receiver's authority to take charge of all of NCE's property to protect the interests of NCE's customers. Plaintiffs are correct that as corporate receiver, Merrill was charged with the authority to protect their interests in the specific property of the receivership. They err, however, when they equate this limited authority with general authority to represent their legal interests. As corporate receiver, Merrill did not have general authority to take legal action on behalf of NCE's customers. See Fleming v. Lind–Waldock & Co., 922 F.2d 20, 25 (1st Cir. 1990). His authority was limited to preserving the property of the NCE receivership for those customers. In this regard, he had authority to sue on behalf of the receivership itself but had no authority to bring a cause of action on behalf of the individual customers. See id.; Johnson v. Chilcott, 590 F.Supp. 204, 208 (D.Colo. 1984).

Nor can Merrill's actions on behalf of the receivership be attributed to the individual customers. Application of the doctrine of fraudulent concealment requires the plaintiff to exercise due diligence on his own behalf. One plaintiff therefore cannot rely on the diligence exercised by another plaintiff in investigating a related cause of action. The plaintiffs in this case, therefore, could not rely on the diligence exercised by Merrill in investigating the interests of the receivership. Accordingly, we conclude that the actions taken by Merrill before he began serving as the plaintiffs' attorney

cannot be attributed to the plaintiffs for the purpose of tolling the running of the statute of limitations under the doctrine of fraudulent concealment. We agree with the district court on this point.

Our disagreement with the district court concerns its conclusion that no actions taken by Merrill in investigating the plaintiffs' claims against Kassel are attributable to plaintiffs because the only relevant actions by Merrill are those taken before he filed this suit on plaintiffs' behalf on November 3, 1983. Our review of the record indicates that by that date Merrill did not have any evidence that Kassel was involved in the scheme. Indeed, at that time, he was still pursuing his most promising lead in this regard, Harold Slone, one of the officers of the Tennessee River Coal Company.

However, on November 16, 1983, Merrill served a second set of interrogatories on Slone, specifically asking him about the payment of legal fees to Kassel. As we have pointed out, Slone refused to respond to this question, asserting his rights under the Fifth Amendment. Merrill moved for the court to overrule Slone's objections and order Slone to answer the question. The issue was referred to a magistrate judge who ruled in Merrill's favor. Slone filed exceptions to the magistrate's decision, but the district court affirmed. Slone then appealed the district court's decision, but this court dismissed the appeal for lack of prosecution. Only after the dismissal of his appeal did Slone agree to answer the interrogatories concerning Kassel. As a result, Merrill did not learn the true nature of Kassel's involvement in the scheme until December 5, 1984.

The district court therefore erred in holding that none of Merrill's actions in investigating the plaintiffs' claims against Kassel was taken on their behalf. We conclude that the actions taken by Merrill between November 3, 1983 and December 5, 1984, while serving as the plaintiffs' attorney, are at least attributable to the original plaintiffs, Jarrett and Austin. Thus, assuming the plaintiffs prove the remaining elements of their claim of fraudulent concealment, the running of the statute of limitations would therefore be tolled between those dates. As noted, neither party disputes that the statute started running in December 1981. Thus, less than two years elapsed before Merrill began his representation of the plaintiffs in November 1983. The running of the statute was then tolled until Merrill discovered Kassel's involvement in the scheme in December 1984. Merrill moved to add Kassel as a defendant on May 23, 1985. Thus, by this time, no more than two and one half years of the three-year statutory period had elapsed. As a result, if the plaintiffs can prove the remaining elements of their fraudulent concealment claim, their causes of action will not be barred by the statute of limitations. The district court therefore erred in granting summary judgment to Kassel on the ground that the plaintiffs claims were barred by the statute of limitations because they had failed to exercise due diligence as a matter of law.

██ Although it is a closer question, we further conclude that the actions taken by Merrill after the filing of this suit are also attributable to the intervening plaintiffs. As noted above, the intervening plaintiffs did not file their claims against Kassel until after the district court denied class certification in 1988. Their motions to intervene, therefore, were filed more than three years after the accrual of their cause of action. The district court correctly concluded, however, that the statute of limitations was tolled by the original filing of the class action against Kassel. In this regard, the Supreme Court has held that the filing of a class action tolls " 'the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action.' " *Crown, Cork, & Seal Co., Inc. v. Parker*, 462 U.S. 345, 353–54, 103 S.Ct. 2392, 2397–98, 76 L.Ed.2d 628 (1983) (quoting *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 544, 94 S.Ct. 756, 761, 38 L.Ed.2d 713 (1974)). Once the statute has been tolled by the filing of the class action, "it remains tolled for all members of the putative class until class certification is denied." *Id.* at 354, 103 S.Ct. at 2397–98.

Although the operation of this principle tolled the running of the statute of limitations for the intervening plaintiffs from the time Kassel was added as a defendant to the class action in May 1985 until the district court denied class certification in July 1988, it remains unclear whether the due diligence of Merrill, as attorney for the proposed class, is attributable to the members of the class under the separate tolling principle of fraudulent concealment. Under the Supreme Court's reasoning in *Parker*, we conclude that it is.

In *Parker*, the Court noted that "[l]imitations periods are intended to put defendants on notice of adverse claims and to prevent plaintiffs from sleeping on their rights...." 462 U.S. at 352, 103 S.Ct. at 2397 (citations omitted). The court concluded, however, that "these ends are met when a class action is commenced." *Id.* The filing of the class action puts the defendant on notice, and "[c]lass members who do not file suit while the class action is pending cannot be accused of sleeping on their rights; Rule 23 both permits and encourages class members to rely on the named plaintiffs to press their claims." *Id.* at 352–53, 103 S.Ct. at 2396–97. Thus, tolling the statute during the pendency of a class action does not undermine either of the purposes of limitations periods.

The tolling doctrine of fraudulent concealment serves similar purposes. First, a defendant who fraudulently conceals a cause of action against him is not entitled to receive the benefit of the statutory limitations period. Indeed, allowing such defendants to benefit from the limitations period would encourage the fraudulent concealment of claims. Second, a plaintiff cannot sleep on a cause of action of which he is unaware, and the due diligence requirement prevents plaintiffs from delaying their investigation of circumstances that should put them on notice of a potential claim.

This case involves the intersection of these two tolling principles. Merrill filed a class action on behalf of the intervening plaintiffs in November 1983. At this time he was investigating Kassel's role in the scheme to defraud the plaintiffs. He did not discover that Kassel was involved in the fraudulent scheme, however, until December 1984, and he did not move to add Kassel as a defendant until May 1985. Kassel argues that the intervening plaintiffs were unaware of this class action and therefore may not rely on Merrill's due diligence in pursuing their claims against him. He therefore concludes that since the intervening plaintiffs did not exercise due diligence on their own behalf, the statute of limitations should not be tolled under the doctrine of fraudulent concealment.

██ We disagree. Kassel fails to account for the additional tolling principle involved in class actions. The Supreme Court has held that class members may rely on the named plaintiffs to pursue their claims and therefore need not file individual claims while a class action is pending to prevent their claims from being barred by a statute of limitations. *Parker*, 462 U.S. at 352–53, 103 S.Ct. at 2396–97. We conclude that the same principle applies to the class representative's exercise of due diligence in discovering related claims. Once a particular plaintiff has taken on the responsibilities of class representative, the diligence exercised by that plaintiff (or the attorney for the class) in discovering any additional related claims of the class should be attributed to the entire class. In essence, once a class action has been filed, the named plaintiff becomes the legal representative of the class with respect to the subject matter of that class action.

We therefore conclude that the actions taken by Merrill after the filing of the class action in November 1983 are attributable to the intervening plaintiffs. As a result, assuming again that plaintiffs prove the remaining elements of their claim of fraudulent concealment, the running of the statute of limitations on their claims was tolled from November 1983 until December 1984. The district court therefore erred in granting summary judgment to Kassel on the intervenors' claims on the ground that the intervenors failed to exercise due diligence as a matter of law.

IV.

In summary, we AFFIRM the district court's judgment dismissing the plaintiffs' claims under §§ 4 and 4h(1) of the CEA, 7 U.S.C. §§ 6 and 6h(1) (1976). We do not do so, however, on the basis of the district court's reasoning that those claims are barred by the applicable statute of limitations. Rather, we affirm the district court's judgment on the ground that plaintiffs do not have implied private causes of action under these sections of the CEA. Although the district court did not address this issue, we must affirm the decision of a district court when that decision is correct for any reason, including a reason not considered by the district court. *Russ' Kwik Car Wash, Inc. v. Marathon Petroleum Co.,* 772 F.2d 214, 216 (6th Cir.1985).

We REVERSE, however, the district court's grant of summary judgment on plaintiffs' claims under §§ 4b(A), 4b(C), and 4o(1) of the CEA, 7 U.S.C. §§ 6b(A), 6b(C), and 6o(1) (1976), and Tennessee common law and REMAND the case for further proceedings consistent with this opinion.

Finally, we note that the parties have raised a number of additional issues on appeal concerning several interlocutory orders entered by the district court during the course of the proceedings below. Plaintiffs maintain that the district court erred in denying their motion for partial summary judgment on the issue of liability and in denying their motion for an alternative deposition procedure. Kassel contends that the district court erred in denying his motion to disqualify plaintiff's counsel and in finding that he was collaterally estopped from relitigating certain issues decided in the CFTC litigation. The parties base their claims of appellate jurisdiction over these nonfinal orders of the district court on the district court's final judgment for Kassel on the statute of limitations issue. Because we reverse the final judgment of the district court on that issue and remand the case for further proceedings, however, there is no longer a final judgment to support our review of these other interlocutory orders. *See Milan Express Co. v. Western Surety Co.,* 886 F.2d 783, 785 n. 1 (6th

Cir.1989). Moreover, depending on the final outcome of the proceedings below after remand, these issues may well become moot. We therefore decline to review, at this juncture, the remaining issues raised on appeal.