Steven S. SCHOLES, etc., Plaintiff,

v.

Lawrence L. SCHROEDER, Jr., Defendant.

No. 90 C 4197.

United States District Court, N.D. Illinois, E.D.

Aug. 21, 1990.

---

**1420**

Gary L. Prior, P.C., McDermott Will & Emery, Chicago, Ill., for plaintiff.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

This Court's threshold July 27, 1990 memorandum opinion and order (the "Opinion"), issued sua sponte pursuant to its regular practice of conducting an initial review of every complaint newly assigned to its calendar,[1] directed the attention of counsel for plaintiff Steven Scholes ("Scholes")[2] to possible subject matter jurisdictional problems. Scholes' counsel responded with a motion under this District Court's General Rule ("GR") 2.31 for reassignment of the action on relatedness grounds to this Court's colleague Honorable James Alesia. That motion has been entered and continued to enable this Court to make the original jurisdictional evaluation, after which—if and to the extent the action survives that scrutiny—Judge Alesia will be in a position to evaluate the GR 2.31 motion.

Scholes has now tendered, by simultaneous filing, a First Amended Complaint (the "Complaint") and a Memorandum of Receiver in Support of Federal Subject Matter Jurisdiction. Both because Scholes has an absolute right to file such a pleading amendment (Fed.R.Civ.P. ("Rule") 15(a)) and because the posture of the case is materially changed by the new allegations, this opinion will of course address all the relevant questions in terms of the Complaint rather than the original version dealt with in the Opinion.

Either Scholes and his counsel have been educated by the Opinion as to some of the jurisdictional problems they must overcome or they have given the matter more thought in that respect, and of course that is all to the good in either event. For example, the Complaint has now dropped Douglas as one of those on whose behalf Scholes, as receiver, sues Lawrence Schroeder, Jr. ("Schroeder").[3] And Complaint ¶¶ 2, 3 and 5(b) reflect total diversity of citizenship between Scholes and Schroeder, so that 28 U.S.C. § 1332 may serve as a possible predicate for subject matter jurisdiction if all other prerequisites are present.

But it is of course black-letter law that federal subject matter jurisdiction extends to *causes of action*, not to entire cases as such. To be sure, such jurisdiction may be ancillary or pendent as well as original—but the point is that every asserted cause of action must be looked at separately, rather than tossing them all into the same basket simply because federal jurisdiction may exist (for example) in diversity terms. This opinion therefore turns to a parsing of the several claims advanced by Scholes in the Complaint.

At the outset this Court must reject as untenable Scholes' suggestion at his Mem. 1–2 that an Article III "case" or "controversy" inquiry—the question at the very core of federal judicial power—is

---

1. See *Wisconsin Knife Works v. National Metal Crafters*, 781 F.2d 1280, 1282 (7th Cir.1986): The first thing a federal judge should do when a complaint is filed is check to see that federal jurisdiction is properly alleged.

2. Scholes' suit has been and remains a purely representative one—brought not in his own individual right but solely as receiver for D & S Trading Group, Ltd. ("D & S"), Analytic Trading Systems, Inc. ("AT Systems") and Analytic Trad-

ing Service, Inc. ("AT Service"). Originally Scholes also sued as receiver for Michael Douglas ("Douglas") and for another corporate entity, Market Systems, Inc. ("MSI"). As reflected later in the text, that is no longer the case.

3. Assertedly Douglas and Schroeder were the main culprits in the schemes that form the gravamen of the Complaint.

somehow different from the examination of subject matter jurisdiction as counseled by *Wisconsin Knife Works.* And by the same token, the notion of a plaintiff's "standing" partakes of a double aspect—the constitutional one and the prudential one (see, e.g., among the many cases dealing with the constitutional branch, *Linda R.S. v. Richard D.*, 410 U.S. 614, 616–18, 93 S.Ct. 1146, 1147–49, 35 L.Ed.2d 536 (1973) and, most recently in our Court of Appeals, *Love Church v. City of Evanston*, 896 F.2d 1082, 1084–85 (7th Cir.1990))—so that concept too demands threshold attention in subject-matter jurisdictional terms.

As for the substantive issues that impact on such jurisdiction, even though the Complaint has sought to cure some of the possible flaws suggested in the Opinion, the Complaint still persists in retaining others. First of all, the appointment of a receiver is inherently limited by the jurisdictional constraints of Article III and all other curbs on federal court jurisdiction. Thus no federal court could appoint a receiver for (say) the troubled Stotler Group entities,[4] while including in its order of appointment an authorization for that court-appointed officer to bring suits on behalf of (to take an extreme example) IBM or General Motors. To bring the matter closer to the current situation, no federal court could appoint a receiver for *one* of the Stotler entities for the purpose of bringing causes of action that belong only to *another* of those entities.

■ And that identical principle precludes Scholes, as the designated receiver for three corporate entities, from bringing causes of action that belong to their investors as such, as contrasted with claims that belong directly to those three companies for whom Scholes is the appointed representative.[5] To the extent that the orders tendered to Judge Alesia for his signature purport to authorize suit on behalf of the investors, those orders are at odds with the fundamental command of Article III.[6]

It is therefore extraordinarily troubling to find Scholes' counsel invoking authorities from the bankruptcy area as though they stated any different principle. That is not so at all: *Koch Refining v. Farmers Union Central Exchange, Inc.*, 831 F.2d

---

4. As chance would have it, this District Court's random assignment system recently delivered to this Court's calendar *Commodities Futures Trading Commission ["CFTC"] v. Stotler Funds, Inc.*, No. 90 C 4387. In that case CFTC initially moved for a receivership because of the fast-moving problems that demanded preliminary relief, but this Court denied such relief for other reasons (principally the concern that such an appointment would likely be perceived by the investing public as a signal to flee the commodities pools managed by Stotler Funds, Inc., effectively scotching the ability of Stotler Funds to sell the rights to manage those pools and thus to obtain proceeds for the ultimate benefit of investors in its other already-impaired pools). In shaping more appropriate relief (in that case the appointment of a Special Master instead of a receiver), this Court had occasion to give a good deal of thought to the concepts explored in this opinion.

5. That should be contrasted with the situation in which one or another of those companies has a claim on its own behalf, the recovery from which will result in the enhancement of *its* assets, thus ultimately benefiting the investors in that company. Nothing that is said here is in any respect inconsistent with *SEC v. Keller Corp.*, 323 F.2d 397, 402–03 (7th Cir.1963) or *Esbitt v. Dutch-American Mercantile Corp.*, 335

F.2d 141, 143 (2d Cir.1964), on which Scholes' Mem. 7–9 seeks to rely. Quite to the contrary, both of those cases (and all other cases known to this Court) support the notion that the receiver is "to marshal the assets of the [corporation in receivership]" (*id.*)—the concept that benefits to the shareholders or investors must be *derivative* of that marshaling of assets, and must not be obtained by direct action. Just as shareholders cannot advance in their own behalf (as contrasted with derivatively) any claims that belong to their corporation (see most recently *Sears v. Likens*, 912 F.2d 889, 892 (7th Cir.1990)), so the receiver cannot advance in his own behalf (that is, in the receivership entity's behalf) claims that belong to investors or shareholders individually.

6. In that respect, under our separation-of-powers system of government the ability to confer substantive legal rights that may create standing in Article III terms is vested in Congress and not the judiciary (*Linda R.S.*, 410 U.S. at 617 n. 3, 93 S.Ct. at 1148 n. 3). Even so, this opinion should not of course be misunderstood as acting directly to vacate or otherwise modify an order entered by one of its colleagues in a different case—that is for Judge Alesia to decide in the case assigned to his calendar. But what this Court *is* obliged to do is to eschew the enforcement in *this* case of the invalid aspect of that order.

1339, 1342–44 (7th Cir.1987)—including all the passages quoted at length in Scholes' current memorandum—clearly defines the bankruptcy trustee's role *as a representative of the estate*. Throughout that opinion *all* the references to the bankruptcy trustee representing the interests of the creditors of the debtor, as well as the debtor itself, are framed in terms of the trustee marshaling the *debtor's* property—the debtor's claims. Though a bankruptcy trustee is given *statutory* power (something that is not present here) to represent the interests of creditors generally as well as the debtor itself, even in that respect the trustee's power is to harvest the property belonging *to the estate* and not to those parties (whether creditors or others) who may ultimately gain from the distribution of that harvest.

Indeed, that could not be more plainly stated than in a portion of *Koch Refining*, 831 F.2d at 1348 (citations omitted) that Scholes has not chosen to quote:

> It is axiomatic that the trustee has the right to bring any action in which the debtor has an interest, including actions against the debtor's officers and directors for breach of duty or misconduct. In that capacity, the trustee acts to benefit the debtor's estate, which ultimately will benefit the debtor's creditors upon distribution. He also has creditor status under section 544 to bring suits for the benefit of the estate and ultimately of the creditors.

At best Scholes' posture vis-a-vis the defrauded investors approaches, though it does not reach, the status just described—for there is no statute that gives Scholes "investor status" as to the receivership entities. What he *does* have, as already stated, is the right expressed in the first two sentences quoted from *Koch Refining*. That is equally true of the Illinois case

invoked by Scholes, *Holland v. Arthur Andersen & Co.*, 127 Ill.App.3d 854, 862, 82 Ill.Dec. 885, 890, 469 N.E.2d 419, 424 (1st Dist.1984) ("We do agree that a liquidation trustee may only pursue those claims which belong to the estate of the debtor corporation"). And no different conclusion is called for by the decision in *SIPC v. Vigman*, 908 F.2d 1461 (9th Cir.1990), which Scholes' counsel have attached to their current memorandum. *Vigman* speaks entirely to the same effect.[7]

■ In short, *Caplin v. Marine Midland Grace Trust Co. of New York*, 406 U.S. 416, 429–34, 92 S.Ct. 1678, 1685–88, 32 L.Ed.2d 195 (1972) remains impeccable authority for the proposition that a receiver or like surrogate cannot pursue claims that belong, not to the receivership estate as such, but rather to those who may have an ultimate derivative interest in the estate. Neither Scholes' counsel nor this Court may properly engage in a divination of entrails to predict how *Caplin* might fare if it were tendered to today's Supreme Court—as a matter of principled jurisprudence, an unreversed Supreme Court decision that has not been undercut by later case law from that Court binds all of us.

■ With that having been said, it is time now to turn to the Complaint, at all times focusing on the just-expressed distinction that Scholes seeks to blur but that this Court will not. Fraud on *investors* that damages those *investors* is for those *investors* to pursue—not the receiver. By contrast, fraud on the *receivership entity* that operates to *its* damage is for the *receiver* to pursue (and to the extent that investors as the holders of equity interests in the entity may ultimately benefit from such pursuit, that does not alter the proposition that the receiver is the proper party to enforce the claim). And as stated earli-

---

7. It is worth observing parenthetically that Scholes Mem. 17 says:
   > It would truly be an anomaly if the Receiver could assert treble damage RICO claims ... based on securities fraud but not securities fraud claims.
   If Scholes' counsel had really read *Vigman*, they would have noted that an integral part of its holding was that SIPC was limited in precisely

that way—it could assert a RICO claim though not a 1934 Act § 10(b) claim. That does not of course bear directly on the result here, but it certainly illustrates the same lack of precision in analysis that has marked Scholes' entire approach in this case. *Vigman* really supports this Court's conclusion rather than that advanced by Scholes.

er, to the extent that the orders that appointed Scholes as receiver have purported to confer power on him to sue directly on behalf of investors, rather than in accordance with the just-stated principles, those orders exceed the power of the judiciary and will not be enforced in this action.

■ All the schemes described in Complaint ¶¶ 8–17 (the "D & S Scheme"), 19–27 ("AT Systems") and 29–36 ("AT Service") continue to be framed in terms of alleged fraud on the investors, as was true in the original Complaint. But in the new pleading, Complaint ¶ 18 (alleged as to the D & S Scheme) now says:

> 18. As further alleged below, these misrepresentations and omissions by Schroeder and Douglas were not in the furtherance of the interests or for the benefit of the receivership entities, but solely in their own interests as part of a scheme and conspiracy by Schroeder, Douglas and others to loot the receivership entities and to otherwise act to the detriment of the receivership entities.

And there is a corresponding allegation in Complaint ¶ 28 as to AT Systems and Complaint ¶ 37 as to AT Service. Then the conduct that assertedly affected the *entities* rather than the *investors* is described in Complaint ¶ 38:

> 38. After the receivership entities received the monies the investors were fraudulently induced to invest in D & S and AT Systems, Douglas, Schroeder and others misappropriated the monies or their proceeds for their own benefit, as they had intended to do.

Count I purports to sound in the securities laws: It alleges (and this Court of course accepts as true) that Schroeder violated 1934 Act § 10(b) and SEC Rule 10b–5. But in terms of the buyer-seller relationship that is required for such causes of action (*Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), adopting the rule announced two decades earlier in *Birnbaum v. Newport Steel Corp.*, 193 F.2d 461, 463–

64 (2d Cir.1952)), the entities on whose behalf Scholes may sue were themselves the *sellers* of the securities, while the investors on whose behalf Scholes may not sue were the *buyers*. Before Count I may be accepted as coming within federal jurisdiction, Scholes must provide authority for the bringing of a Section 10(b) suit by the *seller* of securities against its own agents for their fraud in the course of selling those securities.[8]

Count II poses a somewhat different question, because it asserts a claim under 1933 Act § 12(2). To the extent that such a claim continues to speak on behalf of the investors as such it cannot of course stand, but Complaint ¶ 45 also alleges (emphasis added):

> Schroeder is liable under Section 12(2) of the 1933 Act because he knowingly or recklessly made misrepresentations and omissions, individually and in concert with Douglas and others, upon which the investors *and the receivership entities* relied to their detriment in purchasing and *selling* purported limited partnership interests and securities in D & S, AT Systems and the AT Systems Partnership.

Such conclusory wording alone cannot do the job. Based on the substantive allegations that preceded that paragraph, any "reliance" by the receivership entities on the Douglas–Schroeder misconduct in the *sale* of securities operated to the entities' benefit and not to their detriment—it actually enabled them to sell securities that would not have been sold had Schroeder and Douglas been making the full and truthful disclosures that are mandated by the securities law. Any detriment sustained by the entities came from the alleged post-sale looting by Schroeder and Douglas. As to Count II, then, it is incumbent on Scholes to explain how the seller of securities can make such a 1933 Act § 12(2) claim in that light and in light of the principles of loss causation stated in *Bastian v.*

---

8. This is a question quite distinct from the applicability or inapplicability of the in pari delicto doctrine, dealt with in Scholes Mem. 17–19.

*Petren Resources Corp.*, 892 F.2d 680, 683–86 (7th Cir.1990).

Count III is an aiding-and-abetting claim based upon Douglas' asserted violations of 1934 Act § 10(b) and 1933 Act § 12(2) and upon Schroeder's having assisted in those violations. It therefore calls for the same type and extent of explanation as both Counts I and II.

Count IV sounds in common law fraud (at which point the diversity of citizenship between Scholes and Schroeder becomes relevant). But because of the continued mistaken focus of the Complaint on investors as the injured parties for whom Scholes seeks to act, all it says is this (Complaint ¶ 55):

> 55. As a direct and proximate result of Schroeder's conduct, the investors and the receivership entities suffered damage, including the loss of monies and proceeds which the investors were fraudulently induced to invest in D & S and AT Systems and which Schroeder and Douglas and others misappropriated.

Nothing at all is really said about what must be the real gravamen of the claim: the fraud *on the entity*. Though this Count IV claim appears to be a highly likely survivor (at last!), it will be possible to say that with any degree of real assurance only as and when Scholes satisfies the requirement of Fed.R.Civ.P. ("Rule") 9(b) that "the circumstances constituting fraud ... shall be stated with particularity"—by fleshing out the circumstances and nature of the misappropriation from the entities, *not* from the investors.[9]

Count V asserts Schroeder's involvement in allegedly fraudulent conveyances, and in that respect it reflects an effort to provide the particularization that is missing from Count IV. But Complaint ¶¶ 62 and 63

miss the jurisdictional boat by claiming fraud on the *creditors* of and the *investors* in the entities, not on the entities themselves. Once again the emphasis in those paragraphs is misplaced. However, because Complaint ¶¶ 58–61 alone do appear to set out a state-law claim against Schroeder over which this Court has subject matter diversity jurisdiction, Complaint ¶¶ 62 and 63 may fairly be viewed as surplusage.[10]

Count VI purports to assert a constructive trust, but it too violates the principles already set out at length in this opinion. It too states a claim on behalf of the *investors*, and as to such a claim too Scholes does not act for the investors as such. In the present form of that Count it cannot stand.[11]

Finally, Count VII sets out on behalf of AT Systems some straightforward breaches of contract by Schroeder. Mirabile dictu, nothing has to be said about any need to correct that money claim, one that is clearly assertable on behalf of one of the receivership entities and that lies within federal diversity jurisdiction.

### Conclusion

In subject matter jurisdictional terms, Scholes has advanced one plainly-sustainable claim (in Count VII), one (in Count V) that is also sustainable but that needs pruning to delete the misconceived surplusage, one (in Count IV) that appears highly likely to be sustainable but needs rewriting to pay more careful attention to the procedural requirements of Rule 9(b) to make sure of the claim's viability, and four others (in Counts I–III and VI) that cannot stand as presently stated and that demand a better explanation than Scholes has provided to date. Accordingly Scholes is or-

---

9. Complaint ¶ 58 in Count V later appears to do at least some of that job, so that a proper restructuring of Count IV ought to be a reasonably easy task for Scholes and his counsel.

10. *Complaint ¶¶ 58, 59 and 61 do call for some cleaning up. They continue to treat Douglas as though he were still a surrogate for whose estate Scholes is now suing, even though as said earlier that has been changed by dropping Douglas*

from the position he occupied in the earlier complaint.

11. Count VI also refers in a puzzling way to Douglas' fiduciary duties (Complaint ¶ 65) and his breach of those duties to his unjust enrichment (Complaint ¶ 67), though Douglas is not a defendant. That just seems another illustration of the lack of thought in assembling the shotgun-type Complaint.

dered to file in this Court's chambers on or before September 4, 1990:

1. a further memorandum addressing the issues that have been posed by this opinion as requiring additional exposition; and

2. a proposed Second Amended Complaint advancing such claims as Scholes still believes to be viable in light of (a) the discussion here and (b) the presentation in Scholes' further memorandum.

This Court will again rule promptly to facilitate Judge Alesia's ability to deal with the GR 2.31 motion for reassignment.