CLAY, Circuit Judge,
dissenting.
The majority finds that the district court erred in granting Appellee (“the Receiver”) authorization to pursue the arbitration claims. I find that the majority’s conclusion contravenes established case law that recognizes a district court’s broad equitable powers to define the scope of a receiver’s authority. Since there is simply no legal basis for usurping and encroaching *666 upon the district court’s broad equitable powers in this case, I would affirm the district court’s decision.
DISCUSSION
I. Standard of Review
As an initial matter, the majority’s fails to set forth the correct standard of review. The record clearly shows that the district court granted summary judgment in favor of the Receiver. The majority appears to argue that the district court’s decision should be reviewed for abuse of discretion because the district court’s “ultimate decision was founded on equitable concerns.” (Appellee’s Br. at 21) This standard of review is unsupported by case law. See, e.g., Carter v. RMH Teleservices, Inc., 205 Fed.Appx. 214, 218 n. 4 (5th Cir.2006) (unpublished case) (holding that “[plaintiff] incorrectly concludes that an abuse of discretion is the standard of review for summary judgment.”). Since this Court reviews a district court’s summary judgment decision de novo, I will employ this standard in reviewing the claims raised in this case. Old Life Ins. Co. of Am. v. Garcia, 411 F.3d 605, 610 (6th Cir.2005); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir.1984).
II. The Arbitration Claims
Appellants allege violations of securities laws, fraud, breach of fiduciary duty, breach of contract, and negligence against the brokerage firms on the grounds that the broker-dealers sold Liberte investments to them through misrepresentations and by failing to disclose material facts and circumstances. Appellants seek actual damages and rescission, the benefit of the bargain, consideration paid for the securities, lost opportunity costs, model portfolio damages, prejudgment interest, and an award of attorneys’ fees, costs, and punitive damages.
The majority finds that the arbitration claims are not encompassed by the receivership estate. Essentially, the majority adopts Appellants’ argument — namely, that the Receiver cannot bring the arbitration claims because they are “pre-purchase” claims of fraud and wrongful inducement and that the Receiver can only assert “post-purchase” claims such as the disgorgement of wrongfully disbursed commissions. Although it may be possible to distinguish between “pre-purchase” and “post-purchase” claims, this distinction is simply not meaningful or persuasive. First, the record shows that the Receiver in this case has successfully brought both “pre-purchase” and “post-purchase” claims on behalf of investors in the past. See, e.g., Wuliger v. Moore, No. 03 CV 0734 (N.D.Ohio); Javitch v. Gibson, No. 04 CV 0262 (N.D.Ohio); Wulinger v. Wash. Viatical Settlement Brokers, No. 04 CV 1526 (N.D.Ohio). As the district court aptly noted, the Receiver in this case has pursued claims for
(1) securities violations under both Securities Act of 1933 and Securities Exchange Act of 1934 with the prayer seeking an award of consideration paid by those [ ] investors whose business the Defendant solicited ...
(2) Racketeering Influenced and Corrupt Organizations (“RICO”) seeking an award of treble damages of the amount of investment;
(3) common law fraud seeking an award of damages consisting of the [] investors’ lost investment ...
(4) fraud in the inducement seeking “an award of damages consisting of the [] investors lost investments ... and
(5) breach of contract seeking an award of damages consisting of the [ ] investors lost investments....
*667 (J.A. 2817) (internal quotation marks and citation omitted) (formatting added). A distinction between “pre-purchase” and “post-purchase” claims is also not practical because Appellants and the Receiver “seek liability under the same securities laws, both allege breach of contract, common law fraud and claims sounding in negligence.” (J.A. 2318) The arbitration claims are simply not special or distinct, and the Receiver has clearly demonstrated the ability to pursue claims on behalf of investors. Second, in this case, the Receiver has an order from the district court authorizing him to pursue all claims on behalf of the receivership estate and the individual investors.
III. The Receiver is Authorized to Pursue the Arbitration Claims[11]
Appellants’ principal argument is that the district court “gave the Receiver greater rights to the. [ ] arbitration claims than the Liberte receivership entity had,” and that receivers “can sue only on behalf of the entities for whom they are appointed and cannot sue on behalf of investors in those entities.” (Appellants’ Br. at 16) Appellants cite a plethora of cases in support of this argument. However, most of the cases are inapposite because they concern bankruptcy receivers. A bankruptcy receiver’s duties and functions are different from those of an equity receiver, particularly because the scope of a bankruptcy receiver’s power is set forth in statutes. See, e.g., In re Cannon, 277 F.3d 838, 848 (6th Cir.2002) (noting that a bankruptcy statute grants a bankruptcy trustee the standing and power to avoid the transfer of an interest in property); see also In re Van Dresser Corp., 128 F.3d 945, 947 (6th Cir.1997) (construing the scope of a bankruptcy estate under the relevant bankruptcy statutes).
The Receiver has standing to pursue claims against the brokerage firms because he has been expressly authorized by the district court to bring claims on behalf of the receivership estate and defrauded investors. The Receiver is assigned the rights of the parties he is representing. See, e.g., Goodman v. FCC, 182 F.3d 987, 991-92 (D.C.Cir.1999) (holding that a receiver may lack standing to sue if the party he is representing cannot allege an injury or assert a claim). While this representation is often limited to the entity held in receivership, this Court’s precedents allow a district court to extend that representation to parties alleging claims against that entity. Javitch v. First Union Sec., Inc., 315 F.3d 619, 626 (6th Cir.2003). In this case, the district court did just that. Furthermore, the record contains concrete and particularized allegations of fraud. Since the alleged injuries *668 are fairly traceable to the action of the broker-dealers, there is a causal connection between the challenged conduct and the alleged injuries. Moreover, it is also likely that the injuries will be redressed by a favorable decision. Simply put, the parties the Receiver has been authorized to represent have standing to sue the broker-dealers. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Since the Receiver is authorized to represent the defrauded investors, he may assert claims against the broker-dealers. See Javitch, 315 F.3d at 626. Therefore, this case is not, as the majority suggests, one where the receiver hopes to “pull the arbitration proceeds into the receivership pool” without a sufficient stake in the outcome of that arbitration. Maj. Op. at 656. Rather, this is a case where the district court has properly authorized the receiver to protect the rights of the receivership estate and the defrauded investors alike.
Contrary to the majority’s conclusion, case law clearly indicates that receivers have broad powers to pursue claims on behalf of a receivership estate and individual investors, and that the scope of a receiver’s power is determined by the district court’s appointment orders. See, e.g., Javitch, 315 F.3d at 625-27; McGinness v. United States, 90 F.3d 143, 145 (6th Cir. 1996); Jarrett v. Kassel, 972 F.2d 1415, 1426 (6th Cir.1992).
In Javitch, a receiver sued four brokerage firms for negligence, breach of fiduciary duties and various securities violations on behalf of defrauded individual investors. 315 F.3d at 622. The receiver claimed that he could bring the action on behalf of the individual investors, but the brokerage firms moved to dismiss the action. On appeal, this Court stated:
Ohio courts have described a receiver as “merely the administrative arm of the court who takes charge of the assets of the partnership for the purpose of conserving them to the ends of equity and for the benefit of creditors generally.” Tonti v. Tonti, 118 N.E.2d 200, 202 (Ohio Ct.App.1951) (emphasis added); see Mine Safety Appliances Co. v. Best, 76 N.E.2d 108, 110 (Ohio Ct. Common Pleas 1947) (stating that the receiver “stands as a ministerial officer of the court not having title to the property, but obtaining his authority by the act of the court alone”). The appointing court defines the powers of the receiver and, therefore, controls his actions.
Javitch, 315 F.3d at 626 (quoting McGinness, 90 F.3d at 145-46) (emphasis in original). The Court concluded that a receiver could “stand[ ] in the shoes of the entity in receivership, ... depending] on the authority granted by the appointing court and actually exercised by the receiver,” but found that the receiver in Javitch did not have express authorization from the district court to pursue the contested claims on behalf of individual investors. Id. As the district court correctly noted in this case, nothing in Javitch stands for the proposition that a receiver may never be authorized to pursue claims on behalf of individual investors. Rather, Javitch indicates that the district court determines the scope of a receiver’s powers. Since the district court did not authorize the receiver in Javitch to pursue certain claims on behalf of investors, this Court properly found that pursuing the claims was beyond the scope of the receiver’s power in Javitch.
Similarly, this Court found that determining the scope of the receiver’s appointment was important in Jarrett, 972 F.2d at 1426. In Jarrett, a case where defendants “conspired with others to sell contracts ... in violation of the Commodity Exchange Act, 7 U.S.C. § 6,” id. at 1417, the district court appointed a receiver for “the [ ] companies involved in the [financial] scheme,” id. at 1418. The receiver “acquired the *669 assets of the companies for liquidation and distribution to the defrauded customers but failed to collect sufficient funds for that purpose.” Id. To procure additional funds, the receiver “sought and obtained permission from the [district] court ... to file [a] lawsuit ... on behalf of [the individual] customers against ... one of the other companies involved in the scheme.” Id. Because the statute of limitations had elapsed, the receiver’s action was dismissed. On appeal, the individual investors argued that the statute of limitations should be tolled because the receiver’s actions are attributable to the investors. This Court found “that the actions taken by [the receiver] before he filed th[e] suit ... are not attributable to the plaintiffs,” but that the “investigation [that] continued after [the suit was filed], is attributable to the plaintiffs, and tolled the running of the statute of limitations.” Id. at 1426. More specifically, the Court stated:
we first address the plaintiffs’ argument that [the receiver’s] actions as corporate receiver for [the company] were taken on their behalf. They base this argument on the receiver’s authority to take charge of all of [the company’s] property to protect the interests of [the] customers. Plaintiffs are correct that as corporate receiver, [the receiver] was charged with the authority to protect their interests in the specific property of the receivership. They err, however, when they equate this limited authority with general authority to represent their legal interests. As corporate receiver, [the receiver] did not have general authority to take legal action on behalf of [the] customers. His authority was limited to preserving the property of the [company’s] receivership for those customers. In this regard, he had authority to sue on behalf of the receivership itself but had no authority to bring a cause of action on behalf of the individual customers.
Id. (citations omitted). In Jwirett, the receiver’s actions were deemed to be attributable to the individual investors only after the district court authorized the receiver to represent the investors. Before the district court expanded the receiver’s powers to encompass the lawsuit on behalf of the investors, the receiver simply could not represent or act on behalf of individual investors.
This Court reached a similar conclusion in McGinness, a case where an Ohio state court “appointed [a] receiver to take possession of property ... for the purpose of satisfying a judgment rendered in a divorce action.” 90 F.3d at 144-45. In McGinness, the receiver commenced a wrongful levy action against the Internal Revenue Service (“IRS”). The IRS moved to dismiss the receiver’s complaint arguing that the receiver “possessed no interest in or lien on the receivership property; and [] [that] he stood in the place of the taxpayer.” Id. at 145. As in Javitch, this Court stated that
[t]he appointing court defines the powers of the receiver and, therefore, controls his actions.... Because the receiver does not act under the control of or on behalf of the debtor-taxpayer, he does not stand in the place of the owner of the assets over which he exercises his authority.
Id. at 145^6. The Court found that
[w]hile ... the receiver can acquire no greater legal rights or powers with respect to the property ..., the receiver’s powers are not limited to the legal rights of the debtor-taxpayer. Upon his appointment, the receiver succeeded to the rights of not only the debtor, but also the creditor. He assumed the power to enforce the rights which the creditors, but for the proceedings under which the receiver was appointed, might have enforced in their own behalf.
*670 Id. at 146 (internal quotation marks and citations omitted). The Court concluded that the receiver “was exercising th[e] power that the appointing court granted him; he was not exercising the rights of [the debtor], representing [the debtor’s] interests, or acting in [the debtor’s] place.” Id. The Court rejected the government’s argument that “the receiver’s right to possess property is purely custodial on behalf of the appointing court,” and concluded that “the receiver in equity acquires lien creditor status over those assets specified by the court at the time of appointment.” Id. (citation omitted). “As a lien creditor, [the receiver] has a property interest in the property he holds in his capacity as receiver.” Id. McGinness does not support a reversal of the district court’s decision.
Contrary to the majority’s averments, McGinness cannot be distinguished on the grounds that it involved a receiver appointed under Ohio state law. This Court interpreted and applied McGinness in Javitch and found that “McGinness does not stand for the proposition that a receiver never stands in the shoes of the entity in receivership, but suggests that the question depends on the authority granted by the appointing court and actually exercised by the receiver.” Javitch, 315 F.3d at 626 (properly applying and interpreting McGinness) (citations omitted). Rather than properly distinguishing McGinness, the majority attempts to distinguish McGinness by circumscribing the application and interpretation of clearly established case law.[12] This Court’s ruling in McGinness, like Javitch and Jarrett, indicates that a receiver may litigate claims on behalf of a receivership estate or individual investors provided that the receiver has the proper statutory or district court authorization. This interpretation of Javitch, Jamtt and McGinness is supported by case law from the First Circuit and Tenth Circuit. See Fleming v. Lind-Waldock & Co., 922 F.2d 20, 24 (1st Cir.1990); see also Commodity Futures Trading Comm’n v. Chilcott Portfolio Mgmt., 713 F.2d 1477, 1482 (10th Cir.1983).
In Fleming, a commodities fraud case, the district court appointed a receiver who
was empowered: to take into his immediate custody, control and possession all assets and property belonging to, or in the possession of, [the investment company] ... to prosecute all claims, choses in action and suits in equity on behalf of [the investment company] and to appear and take necessary or appropriate action in any suit, proceeding or negotiations ... in order to represent and protect the interests of the equity receivership ... to seek and to act subject to further order of the Court in order to prevent irreparable loss, damage and injury to commodity customers and clients and to conserve and prevent the dissipation of funds.
922 F.2d at 24 (formatting added) (citation omitted). The receiver in Fleming “insisted that the [ ] allusion to ‘commodity customers and clients’ [in district court’s appointment] expressly or impliedly authorized him to assert actions on behalf of [the investment company’s] investors.” Id. The district court indicated that “[i]t is axiomatic that [a receiver’s] power is derived from and limited by the order of the court appointing him,” id. at 25 (internal quotation marks and citation omitted), but found that “the order appointing the ... receiver does not authorize him to prosecute actions on behalf of individual investors,” id. at 24 (citation omitted). *671 The First Circuit affirmed the district court’s decision.
Admittedly, the First Circuit stated that “representation of the corporation and protection of its assets as the only purview of the receiver,” and found that the “equity receiver cannot assert these investors’ claims.” Id. at 25. However, in reaching this decision the Court emphasized the importance of the receiver’s appointment order by specifically stating that the “[district] judge who had written that [appointment] order subsequently denied [the receiver’s] later request for such authority” and noting with approval the district court’s finding that “the language of the [appointment] order did not grant ... representational power to [the receiver].” Id. Since the First Circuit offers the district court’s reasoning in support of its conclusion, the Court implicitly adopted the district court’s reasoning. This implicit adoption clearly illustrates how the First Circuit’s conclusion was informed by the district court’s interpretation of its appointment order. Contrary to the majority’s position, it is simply not possible to divorce the outcome in Fleming from the language and scope of the receiver’s appointment order. Like the cases discussed above, Fleming indicates that the language of an appointment order is dis-positive in determining the scope of the receiver’s authorization from the district court.
In Chilcott, a case where a receiver “asserted] on behalf of the [receivership estate] substantive rights existing under Federal Law, the Securities Exchange Act, 15 U.S.C. § 78a et seq, and the Commodities Exchange Act, 7 U.S.C. § 1 et seq.,” individual investors opposed a receiver’s lawsuit arguing that “the Receiver had no standing to assert what they say are third-party claims.” 713 F.2d at 1482. Contrary to the majority’s view, Chilcott does not constitute strong persuasive authority for the majority’s decision. Rather, Chilcott plainly supports an affirmance of the district court’s decision in this case.
In Chilcott, individual investors brought “actions [ ] based on the role of the intermediary brokers and their employees in the operation of [an] allegedly fraudulent scheme and generally allege[d] that the investors were induced to invest ... through misrepresentations.” Id. at 1481. “In contrast, the Receiver’s action, although naming some of the same defendants, [was] based on the dissipation of the [commodities] pool’s assets rather than on any culpable conduct in soliciting the investments.” Id. Since “Receiver [wa]s asserting only claims of the pool,” the Court noted that “the investors will eventually have to proceed with their individual actions if they are to recover at all on their claims of misrepresentations in the inducement to invest and for damages resulting therefrom.” Id. at 1485 (emphasis in original). However, the Court expressly held that “the Receiver had the capacity to initiate the Receiver’s action and was the proper real party in interest to bring [a] suit” on behalf of individual investors. Id. at 1482. The Tenth Circuit declined to address standing and left the issue for the district court to decide. Notably, the Tenth Circuit stated that standing may be decided based on “evidence produced” by the parties to “support the capacity to sue and the real party in interest.” Id. at 1483. As in the cases discussed above, nothing in Chilcott indicates that there is an inherent limitation in a receiver’s capacity to sue.
Instead of relying on Chilcott, the majority places great weight on the district court’s decision on remand. The majority’s reliance on the district court’s ruling is misplaced because Chilcott — and not the district court decision — sets forth persuasive Tenth Circuit precedent. As stated above, the Tenth Circuit contemplated a *672 case-by-case approach and instructed the district court to decide the issue of standing based on “evidence produced” by the parties. Chilcott, 713 F.2d at 1483. Since the outcome on remand was based on the evidence adduced by the parties, the district court’s standing determination is fact-specific and simply does not control the outcome in the instant case.
The majority’s reliance on Knauer v. Jonathon Roberts Fin. Group, Inc., 348 F.3d 230, 234 (7th Cir.2003), Scholes v. Schroeder, 744 F.Supp. 1419, 1420-23 (N.D.Ill.1990), and Marwil v. Farah, No. 03-CV-0482-DFH, 2003 WL 23095657, at *5 (S.D.Ind. Dec. 11, 2003) (unpublished case) is woefully misplaced.
In Knauer, the Seventh Circuit summarily concluded “that the district court was probably correct in concluding that [a receiver] ... had no standing to pursue the Ponzi sales claims” because the “Ponzi entities themselves are not injured by the sales of securities,” but found that “the diversion of funds ... did arguably constitute injuries to the Ponzi entities, giving [the receiver] standing to pursue” the claims of “embezzlement or taking of the funds.” 348 F.3d at 234 (emphasis added). Although the Seventh Circuit’s position appears to support the majority’s position, the Seventh Circuit did not cite any case law or otherwise explain the basis for its conclusion. Since Knauer does not set forth any support for its conclusion, it is difficult to see how its holding is persuasive. The decision must be significantly discounted.
Similarly, Scholes contains a dearth of legal reasoning. In Scholes, the district court found that it could not allow a receiver to “bring[ ] causes of action that belong to [the] investors,” and held that “[t] o the extent that the orders tendered to [the court] ... purport to authorize suit on behalf of the investors, those orders are at odds with the fundamental command of Article III.” 744 F.Supp. at 1421. However, the court did not cite meaningful case law in support of this conclusion. Notably, the court relied on Caplin v. Marine Midland Grace Trust Co. of New York, 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972), a bankruptcy case where the Supreme Court found that a bankruptcy trustee does not have standing to sue an indenture trustee on behalf of debenture holders “by examining the nature of Chapter X [bankruptcy] proceedings, the role of the trustee in [bankruptcy] reorganization, and the way in which standing to sue on behalf of debenture holders would affect or change that role.” Id. at 422, 92 S.Ct. 1678. Since bankruptcy cases are factually and legally distinguishable from cases concerning equity receiverships, reliance on Caplin is not appropriate. See, e.g., Chilcott, 713 F.2d at 1482 (finding that “Caplin is distinguishable” because “[i]t dealt with the right of a trustee under Chapter X of the Bankruptcy Act to assert, on behalf of debenture holders, claims of misconduct by an indenture trustee.”).
Last, in Marwil, the district court found that “[notwithstanding the phrase included in an agreed court order negotiated among counsel in the SEC action, the court simply does not have the power to transfer property (including causes of action) from non-parties (the note holders) to the conservator/receiver.” 2003 WL 23095657, at *5. Marwil — aside from being a non-binding, unpublished district court case from a different jurisdiction — is simply not persuasive because it relies on cases concerning bankruptcy trustees. Like Scholes, Marwil improperly relied on Caplin. The majority’s reliance on these cases is misplaced.
In this case, the majority misconstrues the cases discussed above and concludes that the Receiver simply cannot litigate claims on behalf of the individual investors. *673 Where the courts have ruled against receivers, including Jarrett, Javitch, and Fleming, the rulings were compelled by receivers’ attempts to exercise powers that were not included in their appointment orders. These cases show that receivers can only exercise the power that a district court gives them, and that receivers who fail to confine or otherwise limit themselves to the district court’s appointment orders will not be allowed to exercise unrestrained power. Receivers may only exercise powers that were contemplated by the district court and expressly set forth in the district court’s appointment order.
Moreover, there is no language in any of these cases to support the conclusion that a receiver’s powers are inherently limited. Case law does not support the proposition that receivers are never allowed to pursue claims on behalf of individual investors. Rather, this Court is charged with construing and interpreting the scope of the district court’s appointment orders. Since “the question depends on the authority granted by the appointing court,” a receiver enjoys the powers which the district court grants. Javitch, 815 F.3d at 626. Because receivers are given different powers by different courts, it is important to recognize that appointment orders must be interpreted on a case-by-case basis. The majority fails to recognize that a court’s interpretation of an appointment order in another case does not control the outcome in this case because the scope of a receiver’s duties and responsibilities varies. See J.A. 2320 (noting that “the orders modifying the Receivers’ authority to the present are a stark contrast to the original orders of appointment and signify the strange odyssey of this particular litigation. ”) (emphasis added).
In the instant case, the record clearly shows that the district court granted broad powers to the Receiver. The district court’s appointment orders “are generally aimed at marshaling assets for the benefit of the class/investors, among others.” (J.A. 2320-21) (footnote omitted). In this case, the district court authorized the Receiver to take control of Liberte policies to maximize their worth in the best interest of the investors. The Receiver is “authorized to commence litigation against banks who participated in illegal activities of money laundering, RICO violations, negligence, and other tortious conduct which contributed to the depletion of funds from [Capwill’s entities].” (J.A. 2321) (internal quotation marks and citation omitted). The district court allowed the Receiver to recover commissions from Liberte agents and brokers. “Since the claims against agents and/or brokers sounding in contract or tort arose from claims by investors, those claims were ‘deemed to be assets of the receivership estates’ and were only to be pursued by the Receiver[ ].” Id. (citation omitted). The district court also “expanded the Receivers’ responsibilities and authorized them ‘to represent and pursue the interests of the investors directly.’” Id. (citation omitted). These are expansive appointment orders.
The district court also interpreted its appointment orders and concluded that the Receiver was authorized to bring claims on behalf of individual investors. The district court’s decision is supported by the plain language of the appointment orders. The majority fails to give effect to language in appointment orders that empowers the Receiver to bring actions on behalf of individual investors.[13] In so doing, the majority has contravened established case law that *674 recognizes a district court’s broad equitable powers to define the scope of a receiver’s authority. Case law clearly indicates that courts look at the district court’s appointment order to determine the scope of authority, and that a receiver cannot exercise powers beyond those awarded by the district court. The majority deviates from established precedent by holding that the Receiver may not exercise powers expressly authorized by the district court. In this ease, there is simply no legal basis for usurping and encroaching upon the district court’s broad equitable powers.
IV. Authorizing the Receiver to Pursue the Arbitration Claims is Not Unjust
1. Reimbursement
Appellants argue that they are entitled to retain the benefits of the arbitration claims because they have funded the arbitration claims for more than five years without the Receiver’s assistance. The record shows that the district court was “cognizant of the costs expended thus far by the [Appellants] in pursuit of their arbitration claims.” (J.A. 2325) Indeed, “[t]he Receiver [was] directed to initiate discussions regarding the issue of reimbursement with the [Appellants].” (J.A. 2326) No inequity would result from allowing the Receiver to recover any proceeds from the arbitration claims because the Receiver could reimburse Appellants for any costs already incurred. Appellants simply fail to explain in legal or practical terms why reimbursement is inadequate to compensate them for the expenses and costs they have incurred in the arbitration.
2. Dissatisfaction with the Receiver
Last, Appellants argue that the Receiver has sued few brokerage firms and is “settling claims against Liberte agents for return of commissions, not full compensatory damages.” (Appellants’ Br. at 45) Appellants point to the Receiver’s representations to the district court:
Mr. Newcomber: Investors may have other claims other than just the loss of their money....
Mr. Javitch: That’s exactly the point because we’re [pursuing] only the recovery of the commission.
Mr. Wuliger: No, no. [ ] [W]e are pursuing more than that, but for purposes of resolution .... we have uniformly taken the position, return the commission dollars.
The Court: Well, that’s right.... If someone returns the commission dollars, the case as against the receiver or receivers is done.
Mr. Javitch: Right.
The Court: Now, that does not insulate them from any claims of the individual investors, but I don’t think we can handle that here ... because ... the claims may be wider than those encompassed in the class action.
(J.A. 2081-82) (formatting added). Appellants oppose the Receiver’s settlement of claims against brokerage firms for only the return of wrongfully paid commissions. Essentially, Appellants appear to complain about the Receiver’s litigation or settlement strategy. Appellants do not cite any case law to support the proposition that dissatisfaction with a receiver’s litigation strategy allows class members to pursue independent relief. Settlement inherently involves compromise and is designed to limit exposure to liability, risk and uncertainty. Contrary to the majority’s averments, there is nothing in the record to support a finding that the Receiver’s settlement with brokerage firms on behalf of individual investors in other cases has been unfair, unreasonable, inadequate or otherwise wrongful.
The majority’s reversal of the district court’s decision will result in substantial *675 and significant harm to lower-income investors who lack the resources and capacity to pursue claims against brokerage firms own their own. By reversing the district court’s decision, the majority is precluding the Receiver from holding brokerage firms accountable for their wrongdoing on behalf of all other members of the class action. In this case, the Receiver is “charged ... with representing the interests of the investors when necessary, or when it would be impracticable or impossible for them to do so on their own.” (J.A. 1633-34) The Receiver plays an important role in advocating on behalf of a large class of defrauded investors and should be allowed to represent lower-income investors because not all investors have Appellants’ resources and capacity to arbitrate claims against brokerage firms. Indeed, the record shows that the Receiver has successfully brought claims against brokerage firms on behalf of individual investors without any objection from members of the class. The class members have benefited from the Receiver’s actions. The individual investors have already suffered a great financial harm, the majority’s holding will exacerbate and compound this financial harm by precluding the Receiver from continuing to represent all other members of this large and complex class action. The majority’s holding is not just legally incorrect, but greatly prejudicial and inequitable.
CONCLUSION
For the foregoing reasons, I would affirm the district court’s summary judgment decision.

. Appellants advance nine arguments in support of the proposition that the arbitration claims belong to them: 1) the Receiver is attempting to cause Appellants to lose the same money twice; 2) receivers do not have the power to bring suit directly on behalf of investors in receivership entities; 3) giving the arbitration claims to the Receiver would violate the Takings Clause of the Fifth Amendment; 4) receivers cannot lawfully take claims belonging to investors in a receivership entity; 5) the district court incorrectly interpreted McGinness v. United States, 90 F.3d 143, 144-45 (6th Cir.1996); 6) the issue in this appeal is whether the arbitration claims belong to the receivership estate, not whether the pro rata method of distributing funds from the receivership estate is correct; 7) the Receiver does not have authority to pursue pre-purchase claims against Liberte agents for wrongfully inducing investors to invest; 8) the in pari delicto doctrine precludes the Receiver from taking the arbitration claims; and, finally, 9) Appellants are capable of pursuing the arbitration claims without the Receiver’s assistance. Even though all of these claims were thoroughly briefed and discussed by the parties, the majority opinion primarily addresses the standing claim, presumably because the other claims do not support a reversal of the district court's decision or are otherwise meritless.

. Instead of confining itself to discussing the merits of the legal and factual issues presented by this case, the majority resorts to attacking the dissent by inappropriately alleging that it misrepresents applicable case law.

. As members of the underlying class action and active participants in this case, Appellants were in a position to oppose the Receiver’s motions for additional authority to represent individual investors. Appellants consistently failed to object to the district court’s appointment orders.